Matter of Jessica HH. v Sean HH. (2021 NY Slip Op 04165)





Matter of Jessica HH. v Sean HH.


2021 NY Slip Op 04165


Decided on July 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:July 1, 2021

529362
[*1]In the Matter of Jessica HH., Appellant,
v
Sean HH., Respondent. (Proceeding No. 1.) (And Two Other Related Proceedings.)
In the Matter of Sean HH., Petitioner,
v
Jessica HH., Appellant. (Proceeding No. 3.)

Calendar Date:June 3, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Cheryl L. Sovern, Malta, for appellant.
Mary Cosgrove Militano, Scotia, attorney for the children.



Egan Jr., J.
Appeal from an order of the Family Court of Saratoga County (Pelagalli, J.), entered May 28, 2019, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Sean HH. (hereinafter the father) and Jessica HH. (hereinafter the mother) are the parents of two children (born in 2012 and 2013). By order entered March 2018, Family Court, on consent, awarded the parties joint legal custody of the children and the father primary physical custody, and provided the mother with regular, supervised parenting time, including daily telephone and Facetime contact with the children. In May 2018, the mother filed a custody modification petition seeking shared primary physical custody of the children, with regular, unsupervised parenting time.[FN1] In August 2018, Family Court entered a temporary order of custody that provided the mother with certain unsupervised parenting time, including two scheduled overnight visitations with the children, pending resolution of her modification petition. On September 11, 2018, the mother filed a family offense petition, alleging that the father had committed the offenses of assault, stalking, harassment and criminal mischief. On September 24, 2018, the father filed a petition seeking to modify Family Court's August 2018 temporary order of custody and temporarily revoke the mother's parenting time.[FN2] In October 2018, the mother filed an enforcement petition, alleging that she had not been able to exercise her parenting time for the past four weeks and had only spoken to the children five times during that same period.
At the parties' November 2018 court appearance, the mother failed to appear. Family Court scheduled the matter for a fact-finding hearing and specifically cautioned that, if either one of the parties failed to appear at the hearing, their petitions would be dismissed and the hearing would proceed in their absence. Although the mother appeared at a February 2019 court appearance, the fact-finding hearing originally scheduled for that date was adjourned until May 2019. At the May 2019 fact-finding hearing, the mother again failed to appear, and, over the objection of her counsel, Family Court dismissed the mother's custody petition, family offense petition and enforcement petition and proceeded with a fact-finding hearing solely on the father's custody modification petition. Following the hearing, Family Court granted the father's petition, awarded him sole legal and primary physical custody of the children and modified the mother's parenting time schedule, providing her with supervised parenting time to be "arranged as to time, place, circumstances and supervisor as determined by the [f]ather," and telephone and electronic contact with the children "as permitted by the [f]ather." The mother appeals.[FN3]
The mother contends that Family Court abused its discretion when it declined to adjourn the fact-finding hearing and [*2]dismissed her petitions based upon her failure to appear. We disagree.[FN4] "Whether to grant or deny an adjournment rests within the trial court's sound discretion, and such requests should be granted only upon a showing of good cause" (Matter of Thompson v Wood, 156 AD3d 1279, 1282 [2017]; see Matter of Steven B., 6 NY3d 888, 889 [2006]). Here, the only excuse offered by the mother's counsel as to why the mother was unable to attend the hearing was that, following her release from jail in New York earlier the same week, she had returned to her residence in Virginia and that "an emergent situation" subsequently arose that prevented her from getting back to New York. However, given that Family Court previously notified the parties that any failure to appear at the fact-finding hearing would result in the dismissal of their petitions, the mother's history of failing to appear at scheduled court appearances, the lack of evidence detailing the nature of the emergency that prevented her from attending the hearing and the fact that her counsel actively and diligently participated in the hearing in the mother's absence, we find no abuse of discretion in Family Court's denial of the adjournment request of the mother's counsel (see Matter of Thompson v Wood, 156 AD3d at 1282-1283; Matter of Dench-Layton v Dench-Layton, 151 AD3d 1199, 1200 [2017]).
Turning to the father's modification petition, as the party seeking to modify the prior order of custody, it was his burden to demonstrate "a change in circumstances since entry thereof warranting an inquiry into the child[ren]'s best interests" (Matter of Jennifer D. v Jeremy E., 172 AD3d 1556, 1556-1557 [2019]; see Matter of Matthew DD. v Amanda EE., 187 AD3d 1382, 1382 [2020]).[FN5] The record demonstrates that the parties are wholly unable to communicate or cooperate with one another for the benefit of the children. During the relatively short period of time between entry of the prior order and the filing of the father's subject petition, the parties each found it necessary to engage law enforcement to address conflicts that have resulted between them during custodial exchanges and/or conflicts that arose with respect to compliance with the terms of the prior custody order. The parties have similarly been unable to agree on suitable third-party supervisors to supervise the mother's parenting time and disagree with respect to the adequacy of the mother's telephone and Facetime contact with the children. Moreover, the mother has since relocated to Virginia and, therefore, the parenting time provisions set forth in the prior order have been rendered unworkable. Accordingly, we find that a change in circumstances was demonstrated warranting an inquiry into the best interests of the children (see Matter of Jennifer D. v Jeremy E., 172 AD3d at 1557; Matter of Emmanuel SS. v Thera SS., 152 AD3d 900, 901 [2017], lv denied 30 NY3d 905 [2017]).
In making a best interests determination, Family Court must consider such [*3]factors as "the quality of the parents' respective home environments, the need for stability in the child[ren]'s li[ves], each parent's willingness to promote a positive relationship between the child[ren] and the other parent and each parent's past performance, relative fitness and ability to provide for the child[ren]'s intellectual and emotional development and overall well-being" (Elizabeth B. v Scott B., 189 AD3d 1833, 1834 [2020] [internal quotation marks and citations omitted]; see Matter of Brown v Akatsu, 125 AD3d 1163, 1164 [2015]). Importantly, "Family Court's credibility assessments and factual findings will not be disturbed as long as they have a sound and substantial basis in the record" (Matter of Kelly CC. v Zaron BB., 191 AD3d 1101, 1103 [2021] [internal quotation marks and citations omitted]).
The father was the sole witness to testify at the fact-finding hearing and submitted into evidence certified copies of the mother's records from the Saratoga County Sheriff's Department, the Saratoga County Department of Social Services, the State Police and the Saratoga County Department of Probation. The record demonstrates that the mother has a history of substance abuse and mental health issues and, since entry of the prior order, has engaged in a pattern of troubling and erratic behavior that has resulted in her being arrested numerous times in various jurisdictions in and around Saratoga County, including charges for, among other things, endangering the welfare of a child and falsely reporting an incident, stemming from her making a series of unfounded reports against the father to the State Police, Saratoga County Child Protective Services and the Saratoga County Sheriff's Department.[FN6] The mother has exhibited signs of excessive alcohol use on numerous occasions and has failed to submit urine screens as required by the terms of her probation.[FN7]
The father further recounted an incident in August 2018 where the mother took the children, without his consent, on an overnight trip to Massachusetts and, upon their return, one of the children was soaked in urine. During another incident in September 2018, the mother became agitated and aggressive during a custodial exchange with the father at a restaurant and, in front of the children, was yelling, threw chips and a flower pot at the father and then left without properly securing the children in their safety seats. In yet another incident, the mother took the children to Vermont without the father's consent, kept them out of school for two days and was unable to be reached by telephone or other electronic means, prompting the father to contact law enforcement in order to secure the children's return.[FN8] According to the father, the mother also routinely makes disparaging, profane and inappropriate remarks in front of the children during custodial exchanges and telephone and Facetime communications with the children and did not provide him with any prior notice that she was relocating [*4]to Virginia.
The father, meanwhile, has been the children's primary caretaker during the relevant time period. He is gainfully employed, regularly takes the children to medical appointments, and has arranged for child care for those times both before and after the children's school day when he is unavailable, and the children, by all accounts, are doing well in school. Although the father has been the subject of numerous welfare checks by various law enforcement agencies and Child Protective Services, his home has routinely been found suitable and the children well taken care of. The father did indicate his frustration with the mother's behavior and admitted that he has doubts about whether the children could benefit from a relationship with her, but he has nevertheless complied with Family Court's orders, provided the mother with ample opportunities to develop her relationship with the children and likewise encourages the children to engage with her.[FN9] Based on the foregoing, we are satisfied that there is a sound and substantial basis in the record supporting Family Court's determination that an award of sole legal and primary physical custody of the children to the father is in their best interests (see Matter of Jerry VV. v Jessica WW., 186 AD3d at 1801; Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1167-1168 [2020]; Matter of Jillian EE. v Kane FF., 165 AD3d 1407, 1409-1410 [2018], lv denied 32 NY3d 912 [2019]).
Notwithstanding, we do find that Family Court improperly delegated its authority over the mother's supervised parenting time and telephone and electronic contact with the children to the father. "Unless [parenting time] is inimical to the children's welfare, the court is required to structure a schedule which results in frequent and regular access by the noncustodial parent. In so doing, the court cannot delegate its authority to determine [parenting time] to either a parent or a child" (Matter of Ellen TT. v Parvaz UU., 178 AD3d 1294, 1297 [2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 905 [2020]). Family Court ordered that the mother's supervised parenting time "shall be arranged as to time, place, circumstances and supervisor as determined by the [f]ather" and that the mother shall have telephone, Facetime and/or other similar contact with the children "as permitted by the [f]ather."[FN10]
Although the father has sole custody of the children and, in such capacity, has discretion in the selection of an appropriate supervisor, Family Court failed to provide parameters with respect to the frequency of the supervised parenting time to which the mother is entitled and, given her recent relocation to Virginia, failed to consider the logistical concerns in ensuring that she has frequent and regular access to the children (see Matter of Staff v Gelunas, 143 AD3d 1077, 1079 [2016]; compare Matter of Alan U. v Mandy V., 146 AD3d 1186, 1189 [2017]). Moreover, although the father averred that the [*5]mother has made certain inappropriate comments during her telephone and Facetime communications with the children, her conduct was not so egregious as to justify limiting her contact, solely in the father's discretion, without any provisions ensuring that she was granted an appropriate amount of meaningful contact with the children, particularly given her recent move to Virginia. Accordingly, we exercise our independent review power to reestablish telephonic and electronic contact with the children as was previously provided for in Family Court's March 2018 order and remit the matter to Family Court for a hearing for the purpose of obtaining an update on the mother's living situation and fashioning a schedule of supervised parenting time and telephone and electronic contact (see Matter of Staff v Gelunas, 143 AD3d at 1079; Matter of Taylor v Jackson, 95 AD3d 1604, 1604-1605 [2012]).
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as granted Jessica HH. supervised visitation and telephone and electronic contact with the children as determined by Sean HH.; telephone and/or electronic contact reinstated as provided for in Family Court's March 2018 order, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The father moved to dismiss the mother's petition on the ground that she failed to allege a change in circumstances since entry of the prior order. Family Court denied the father's motion.

Footnote 2: Based on the allegations raised in the father's petition, Family Court reinstated the terms of the March 2018 consent order, providing the mother with scheduled supervised parenting time.

Footnote 3: The father did not file a brief on appeal.

Footnote 4: Initially, the mother's failure to appear at the fact-finding hearing did not constitute a default under the circumstances as the mother's counsel attended the fact-finding hearing, offered an excuse for the mother's absence, unsuccessfully sought an adjournment and thereafter actively participated in the hearing, cross-examining the father — the sole witness at the hearing — objecting to the admission of evidence and offering opening and closing statements on the mother's behalf (see Matter of Jerry VV. v Jessica WW., 186 AD3d 1799, 1800 [2020]; Matter of Linger v Linger, 150 AD3d 1444, 1445 [2017]). Accordingly, Family Court's order was not entered on default and is appealable (see Matter of Jerry VV. v Jessica WW., 186 AD3d at 1800; Matter of Amanda I. v Michael I., 185 AD3d 1252, 1253-1254 [2020]).

Footnote 5: Although the father's petition sought to modify Family Court's August 2018 temporary order, at the fact-finding hearing the father orally amended his request for relief, without objection, to seek modification of the March 2018 order and an award of sole legal and primary physical custody of the children (see generally Matter of Vincent X. v Christine Y., 151 AD3d 1229, 1230 [2017]; Matter of Kowatch v Johnson, 68 AD3d 1493, 1495 [2009], lv denied 14 NY3d 704 [2010]).

Footnote 6: The mother's allegations and resulting investigations resulted in the children being subjected to multiple interviews by law enforcement and Child Protective Services regarding her ultimately unfounded allegations of inappropriate sexual conduct by the father.

Footnote 7: The mother was sentenced to probation for a period of one year based upon her conviction of issuing a bad check (see Penal Law § 190.05).

Footnote 8: Additionally, during the brief period of time when the mother was granted unsupervised parenting time with the children, she was late either to pick up or drop off the children on 15 out of the 19 times that she exercised her parenting time.

Footnote 9: The father averred that he has had the children draw the mother pictures and write her letters and he has purchased gifts on behalf of the children for the mother's birthday and Mother's Day.

Footnote 10: Family Court modified the March 2018 order, which previously permitted the mother to have supervised parenting time on Sundays from 2:00 p.m. until 7:00 p.m., on Tuesdays and Thursdays from 2:30 p.m. until 7:00 p.m., and telephone and/or Facetime contact with the children daily from 6:00 p.m. and 7:00 p.m.